UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Cr. No. 08-053 (HHK) |
| : | |
| : | Violation: |
| : |   18 U.S.C. § 1343 (Wire Fraud) |
| v. : | |
| : | |
| **DONNA JEAN ISHMELL,** : | |
| : | |
| **Defendant** : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**BACKGROUND**

Ms. Ishmell is before the Court having been convicted of Wire Fraud. According to her guilty plea, she and her husband, Co-defendant William Steve Ishmell, engaged in a scheme to defraud insurance providers by submitting false claims for damages. Specifically, she has admitted to using a false identity for criminal purposes, and creating false documents to obtain thousands of dollars from an insurance company. Her offense of conviction, however, was not an isolated incident. The defendant's fraud scheme continued for several years and consisted of numerous fraudulent insurance and government disability claims.

Ms. Ishmell's conduct is detailed in the Presentence Report and in the attached statement of Special Agent Robert Werner of the Federal Bureau of Investigation, who was the lead investigator in this case. See Exhibit 1 (attached hereto). The government will not repeat the same information

here. However, that information shows that Ms. Ishmell's crimes were not merely impulsive acts that were out of character for her. To the contrary, Ms. Ishmell frequently and repeatedly engaged in criminal conduct. Posing as her own daughter, she rented cars, obtained auto insurance, was involved in numerous suspect collisions, created false wage documents, caused false police reports to be made, used false or fictitious addresses, hired attorneys to advance her lies, and otherwise pursued serial false claims in order to obtain money to which she and her husband were not entitled. Put more simply, the defendant dedicated her time, energy, and resources to stealing other people's money, rather than earning it.

      If Ms. Ishmell believed she was not hurting anyone simply because she stole from large companies, she was wrong. It is no mystery who pays when an insurance company is defrauded by a scheme such as Ms. Ishmell's: innocent policy holders. See, e.g., Merin v. Maglaki, 599 A.2d 1256, 1259 (N.J. 1992) (observing that "[i]nsurance fraud is a problem of massive proportions that currently results in substantial and unnecessary costs to the general public in the form of increased rates."). Further, in this case, Ms. Ishmell's fraud did not involve only corporate victims. Individuals also suffered negative consequences from Ms. Ishmell's crimes, because in some instances she filed claims against innocent policy holders. For example, when Ms. Ishmell admitted in Court to creating false wage documents that were used in furtherance of a fraudulent claim, that claim was made against a policy holder who had the misfortune of being in the wrong place at the wrong time, and thus becoming an unwitting part of the Ishmells' scheme. While the insurance company footed the bill, undoubtedly the policy holder faced consequences such as increased premiums, payment of a deductible, or perhaps even termination of the policy.

**GOVERNMENT'S POSITION ON SENTENCING**

**I.  Ms. Ishmell Deserves a Significant Punishment Under the Guidelines.**

According to the Probation Office's calculation, the loss amount from Ms. Ishmell's relevant offense conduct regarding her false insurance benefit claims is $116,787.61. The government submits that the loss amount should include an additional $15,097 obtained by the defendant during the same course of conduct for submitting false disability benefit claims.[1] See Exhibit 1, p.3. This combined amount, $131,844.22, raises Ms. Ishmell's offense level to 17 under the United States Sentencing Guidelines.[2] After crediting Ms. Ishmell for acceptance of responsibility, her offense level should be adjusted to 14. That level calls for a sentence of 15-21 months of incarceration.

**II.  Ms. Ishmell Deserves a Significant Punishment Under Section 3553.**

The government respectfully submits that the factors under Title 18, United States Code Section 3553(a) independently support a sentence within the guideline range.

  A.  <u>Nature of the Offense</u>

Ms. Ishmell used skill and deception to assume a false identity for the purpose of defrauding insurance companies of over $116,000 over a period of several years. Her scheme netted over

---

[1] These false disability claims qualify as relevant conduct to the false insurance claims because both sets of offenses involve Ms. Ishmell's efforts to obtain financial benefits from providers by making false representations and submitting false claims during the same period of time. Accordingly, they satisfy the definition of "same course of conduct," USSG § 1B1.3(a)(2), in that they "are sufficiently connected or related to each other to warrant the conclusion that they are part of an . . . ongoing series of offenses." See USSG § 1B1.3, Application Note 9(b).

[2] As part of the plea agreement, the government agreed that, other than the Base Offense Level of 7 and the amount of loss to be determined by the Court, "[n]o other specific offense characteristics or cross references apply." See Plea Agreement, at 2. Accordingly, the government's calculation of Ms. Ishmell's applicable guideline range differs from the presentence report by not including the adjustments at paragraphs 40 and 42 (addressing defendant's role in the offense and USSG § 2B1.1(b)(10)(C)(I)).

$35,000. See Presentence Report, ¶ 31. Using the same tactics, Ms. Ishmell fraudulently obtained welfare benefits in excess of $15,000.

These amounts clearly are significant. Further, the means by which Ms. Ishmell committed these offenses reveals much about her criminal propensity. For years, she has not only pursued a scheme to defraud numerous insurance companies, she did so using her daughter's assumed identity. Identity theft is an especially hurtful crime, which is not mitigated by the fact that Ms. Ishmell stole her daughter's identity. At every stage of Ms. Ishmell's scheme, she disregarded the impact her actions would have on her daughter, including the likelihood of her daughter being arrested and charged for Ms. Ishmell's crimes had law enforcement agents not uncovered the truth about Ms. Ishmell's identity.

Ms. Ishmell's actions also reveal much about her capacity for deception. This case contains numerous instances of her willingness to lie for personal financial gain, and the ease with which she has violated laws designed to protect the community from fraud. Each falsehood represents an independent decision by Ms. Ishmell to break the law, notwithstanding the possible consequences to the victims of her crimes. Each falsehood also represents a missed opportunity to choose a different path. For the past several years, Ms. Ishmell and her husband clearly were capable of earning an honest living and respecting the rights and property of others, but they chose not to do so.

B. <u>History and Characteristics of the Defendant</u>

Ms. Ishmell was raised by supportive grandparents into her teenage years, when she moved in with her mother. She has nine children, including seven with her husband, William Steve Ishmell. Ms. Ishmell apparently has a good relationship with her husband and her children. All but one of her children have reached the age of eighteen.

Ms. Ishmell has no drug or alcohol problems. Nor does she have any significant health or psychological problems, notwithstanding a questionable "memory problem" for which she collects Social Security Insurance  See Presentence Report, ¶ 66 n.4.

Although Ms. Ishmell did not attend high school, she clearly is a capable person who has demonstrated certain skills that would serve her well in any lawful endeavor.  Her first criminal charge -- for welfare fraud -- was not until 2001, when Ms. Ishmell was 40 years old.  In that case, Ms. Ishmell was charged with two counts of Welfare Fraud for collecting, in 1998 and 1999, more than $14,000 in government benefits to which she was not entitled, by failing to report income earned by her daughter, Dana Greene, who was part of her household.  See Exhibit 2, charging document and affidavit.[3]  Ms. Ishmell has reported being unemployed since 1998, see Presentence Report, ¶ 66, when that welfare fraud scheme apparently began.  The relevant conduct in this case traces back to 2000.  See id., ¶ 18.  These circumstances suggest that Ms. Ishmell turned to fraud in her mid- to late-thirties, and has regularly pursued fraud since then to support her family.

In short, Ms. Ishmell's history and characteristics do not mitigate or justify her conduct in this case.

---

[3]     According to court records, that case was *nolled* by the D.C. Deputy Corporation Counsel for reasons unknown to undersigned counsel.

C.  <u>The Need for the Sentence to Reflect the Seriousness of the Offense</u>

A sentence within the guideline range would reflect the seriousness of Ms. Ishmell's conduct and would provide just punishment for her actions.

D.  <u>The Need for the Sentence to Afford Adequate Deterrence</u>

A sentence within the guideline range would serve as an important deterrent to others who might be considering whether to engage in fraud to obtain insurance benefits or government benefits. Further, a sentence below Ms. Ishmell's guideline range would likely have the unintended consequence of reinforcing the misperception that insurance fraud is a victimless crime. Having previously been charged with welfare fraud clearly had no deterrent effect on Ms. Ishmell, and in all likelihood a probationary sentence here would have little or no impact on her or others.

E.  <u>The Need to Provide the Defendant Educational or Vocational Training</u>

Ms. Ishmell would be aided by educational or vocational training as part of her sentence. At the very least, she should be required as part of any period of supervised release to obtain a General Equivalency Diploma or vocational training that will assist her in obtaining lawful employment following any period of incarceration.

**CONCLUSION**

The United States respectfully requests that the Court sentence Ms. Ishmell within the guideline range of 15 to 21 months of incarceration, and in accordance with the factors articulated

in 18 U.S.C. § 3553(a), to punish her for her conduct and to deter others who might consider committing fraud.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY

By:    \_\_\_\_/s/_____
        Jonathan W. Haray, D.C. Bar No. 480140
        Assistant United States Attorney
        Fraud & Public Corruption Section
        555 Fourth Street, N.W.
        Washington, DC 20530
        (202) 353-2877
        *jonathan.haray@usdoj.gov*

        Thomas E. Zeno, D.C. Bar No. 348623
        Assistant United States Attorney
        Fraud & Public Corruption Section
        555 Fourth Street, N.W.
        Washington, DC 20530
        202-514-6957
        *thomas.zeno@usdoj.gov*